Jonathan Shub (SBN 237708)
Kevin Laukaitis*
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033
T: 856-772-7200
F: 856-210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Attorneys for Plaintiff and Putative Class Members*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA DOSS, individually and on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>HISAMITSU AMERICA, INC.<br><br>      Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

Plaintiff, Donna Doss ("**Plaintiff**"), on behalf of herself and all others similarly situated, brings this class action against Defendant, Hisamitsu America, Inc., ("**Defendant**" or "**Hisamitsu**"), and alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

## NATURE OF THE CASE

1.     Defendant sells, markets, and distributes Salonpas® Lidocaine Pain Relieving Gel-Patch ("the **Product**").[1]

2.     Nearly every individual suffers muscle aches and pains and seeks relief for this common problem.

3.     When consumers purchase pain-relieving products the strength of the dose is an important purchasing consideration. In fact, consumers willingly pay a premium for pain-reliving products that have strong doses.[2]

4.     Consumers are also seeking medicine and pain-relief products they can trust, and often consumers look to governmental agencies, such as the United States Food and Drug Administration ("FDA"), for guidance on what is permissible and what is not.

---

[1] The Product itself is manufactured by Defendant's Japanese parent company.
[2] Defendant's non-lidocaine pain reliving patches sell for approximately $0.17 per patch while the lidocaine ones sell for $1.67. *See* https://www.walgreens.com/store/c/salonpas-pain-relieving-gel-patch-with-maximum-strength-lidocaine/ID=prod6334797-product (for lidocaine version) and https://www.amazon.com/Salonpas-Pain-Relieving-Patches-Count/dp/B01AB4U6PI/ref=pd_bxgy_img_2/143-6299856-0809858?_encoding=UTF8&pd_rd_i=B01AB4U6PI&pd_rd_r=7f53c71a-2bf2-4e66-952b-7737ecc79229&pd_rd_w=4XEWI&pd_rd_wg=q6AkY&pf_rd_p=f325d01c-4658-4593-be83-3e12ca663f0e&pf_rd_r=2RJPAYXKMXBZVPYRTKTB&psc=1&refRID=2RJPAYXKMXBZVPYRTKTB (for the non-lidocaine version). Plaintiff only uses the pricing in the previous paragraph as an example to plausibly plead that Defendant does indeed charge a large premium for its Product. The specific premium on a granular level will be determined later in the case by an expert.

5.      Defendant takes advantage of this consumer preference for strong doses by prominently representing on the front of its label that its Product is a "Maximum Strength" lidocaine product.

6.      Defendant also takes advantage of consumer preference for regulated and effective medical products by marketing, distributing, and selling the Product under the guise of being compliant with FDA regulations.

7.   However, Defendant makes this representation in a knowingly false manner. Not only is Defendant's labeling and marketing of the Product non-compliant with FDA regulations for product families of its type, but Defendant's Product contains only 4% lidocaine while similar prescription patches contain 5% lidocaine.

8.   Accordingly, Plaintiff brings this suit on behalf of herself and similarly situated consumers who purchased Defendant's Product. Plaintiff and Class members were damaged because they would not have purchased (or would not have paid a premium) for Defendant's Product had they known the true facts regarding the strength of the Product's lidocaine dose and/or the non-compliance of the Product with government regulations.

## **PARTIES**

9.   Plaintiff Donna Doss is a citizen of California residing in Richmond, which is in Contra Costa County. She purchased Defendant's Product on numerous occasions during all applicable statute of limitations periods.

10.     Hisamitsu is a California corporation, with its principal place of business at 100 Campus Drive, Suite 117, Florham Park, New Jersey 07932. Defendant markets, distributes, and sells the Product, which is manufactured by its parent company, Hisamitsu Pharmaceutical Co., Inc. Defendant Hisamitsu markets, distributes and sells the Product through drug stores, mass retailers, and online retailers throughout the United States.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from the Defendant.

12.     Defendant has sufficient minimum contacts with California to be subject to this Court's personal jurisdiction. Defendant is registered to do business here. Defendant also intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its Product and numerous other products, which renders this Court's exercise of jurisdiction necessary and proper.

13.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendant transacts business in this District, and Plaintiff resides in this District.

## INTRADISTRICT ASSIGNMENT

14.     Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims herein arose in Contra Costa County, California and this action should be assigned to the San Francisco Division or the Oakland Division.

## FACTUAL ALLEGATIONS

15.     Lidocaine is the active ingredient in Defendant's Product and what Defendant specifically advertises about it.

16.     "Lidocaine belongs to the family of medicines called local anesthetics. This medicine prevents pain by blocking the signals at the nerve endings in the skin."[3]

17.     Lidocaine is commonly used in products such as Defendant's Product to help with body soreness and pain.

18.     Lidocaine is also a non-narcotic pain reliever, which has led to a surge in the popularity of products that contain it.[4] Indeed, Defendant has benefitted immensely from selling the Product. For example, Defendant's sales in 2019 were approximately $121 million.[5]

---

[3]https://www.mayoclinic.org/drugs-supplements/lidocaine-topical-application-route/description/drg-20072776

[4]https://www.globenewswire.com/newsrelease/2020/06/24/2052868/0/en/Topical-Pain-Relief-Market-to-Reach-13-276-million-by-2025-at-7-4-CAGR-Says-AMR.html ("The growth of the topical pain relief market include increase in prevalence of arthritis, diabetic neuropathy, and other bone disorders across the globe, rise in geriatric population, *fewer side effects caused by topical pain relief as compared to oral medications*, and high adoption of topical pain relief products by sportsperson.") (emphasis added).

[5]  https://www.statista.com/statistics/326890/external-analgesic-rubs-brands-sales-in-the-us/

*The Product is Non-Compliant with Applicable FDA Regulations*

18.     The FDA regulates the sale and advertising of all drugs, whether available only by prescription or over-the-counter ("OTC"). Under the FDA's current statutory and regulatory framework, an OTC drug product can enter the market in one of three ways: (i) by complying with the applicable monograph; (ii) as the subject of an FDA-approved NDA or, in the case of generic approval, an ANDA; or (iii) through an FDA-approved prescription-to-OTC switch. Obtaining FDA approval through the second and third options requires extensive clinical studies or, at a minimum, a finding by the FDA that a generic drug is bioequivalent to an already approved drug.

19.     Currently, drug products containing 0.5% to 4% lidocaine, such as Defendant's Product, are governed by the FDA's Tentative Final Monography ("TFM") for external analgesic products. 48 Fed. Reg. 5852-01 (Feb. 8, 1983). The TFM provides that such products containing lidocaine as the active ingredient are indicated only for the temporary relief of pain and itching associated with minor burns, sunburn, minor cuts, scrapes, insect bites or minor skin irritations. *Id*. at 5863. The TFM states that "the labeling of the product . . . is limited" to this indication. *Id*.

20.     In its 2003 proposed rule, the FDA proposed adding the following language to the TFM for external analgesic products until the FDA could determine whether patches containing analgesic ingredients, such as lidocaine, were "generally recognized as safe and effective": "The active ingredients of the product consist of

any of the following, within the established concentration for each ingredient, **but not for use in a patch**, plaster, or poultice dosage form." 68 Fed. Reg. 42324-01, 42325-26 (July 17, 2003) (emphasis added).

21.     The FDA proposed this amendment because it had become aware that it needed further data on "[t]he safe and effective concentration of the drug ingredient(s)," "how often the plaster or poultice needs to be changed for effective use," and "[t]he frequency of application that is considered safe and effective," among other areas of concern with external analgesic patches. *Id*. at 42325. The FDA further noted that it "is not aware of sufficient data to classify any OTC external analgesic active ingredient in a patch, plaster, or poultice dosage form as Category I." *Id*. Category I products are those which have been determined by the FDA to be generally accepted as safe and effective and can be marketed without FDA review and approval by complying with the applicable monograph.

22.     Due to the concerns regarding safety and efficacy, the FDA proposed classifying external analgesic patches as Category III products, which may only be marketed and sold following FDA testing, review, and approval of the product through the NDA or ANDA process. *Id*. at 42325-26.

23.     As detailed below, Hisamitsu's marketing and sale of its Product does not comply with either the TFM or the FDA requirements for review and approval of OTC drug products offered outside an applicable TFM. Hisamitsu's noncompliant and misleading marketing of the Product is ongoing.

24.     Hisamitsu makes further misleading statements in its television commercials, claiming that its Salonpas® Lidocaine Pain Relieving Gel-Patch product "blocks pain receptors for effective, non-addictive relief." Hisamitsu's commercials feature "Dr. Bob" Arnot, making demonstrably false and misleading claims to consumers that its product is an FDA-approved or prescription product.

25.     In one commercial, which is accessible via a link on the Salonpas® Lidocaine Pain Relieving Gel-Patch product webpage[6], Hisamitsu depicts Dr. Bob wearing a lab coat in a doctor's office, telling an apparent patient that the Salonpas® Lidocaine Pain Relieving Gel-Patch "blocks pain receptors for effective, non-addictive relief" and recommending the product for the patient's back pain.

26.     Hisamisu repeats these false and deceptive claims in its social media. In an October 16, 2017 blog post titled "Frequently Asked Questions with Dr. Bob Arnot," which is found on Hisamitsu's website for Salonpas®, "Dr. Bob" states that "many doctors prescribe off-label uses for [prescription] lidocaine patches including aggravated nerve pain in the back, neck, shoulders, knees and elbows," and claims that the Salonpas® Lidocaine Pain Relieving Gel-Patch has "4% of lidocaine which I'd argue **is close to the 5% lidocaine patch you would get with a prescription**" and that "Salonpas® **followed the same principles used for the Rx (5% Lidocaine) version**, making it the same size and using the same hydrogel technology as its Rx cousin. **The only change they made was to improve the price** so as to make the

---

[6]https://us.hisamitsu/product/salonpas-lidocaine-pain-relieving-gel-patch
(last accessed March 19, 2021)

product more accessible to the general public." (emphasis added). The same claims are found in a January 9, 2017 blog post on Defendant Hisamitsu's website for Salonpas®, titled "Dr. Bob Arnot on Keeping Healthy and Active with Salonpas."[7]

27.    Hisamitsu further compares its Product to prescription-strength lidocaine patches in an October 2, 2017 blog post on its website for Salonpas®, titled "Lidocaine for Pain Relief." Hisamitsu claims that "Medicare and many insurance companies are no longer providing coverage for off-label use of lidocaine patches. A monthly supply of lidocaine patches can cost hundreds of dollars[,]" and again represents that its Salonpas Lidocaine Pain Relieving Gel-Patch "us[es] the same size and hydrogel technology as the prescription lidocaine patch."[8]

28.    This false and misleading marketing by Hisamitsu is designed to engender trust in the consumer that its Product is prescription-strength and compliant with FDA regulations for such a prescription back patch, or at a very minimum is equal in strength, efficacy, and safety as an FDA regulated and prescribed back patch. However, Defendant is flaunting the regulations the FDA set out for lidocaine products, and its Product is neither FDA-approved nor FDA-complaint.

29.    Accordingly, Hisamitsu's false and deceptive advertising of the Product violates federal and state law, as invoked below.

---

[7]https://us.hisamitsu/blog/dr-bob-arnot-keeping-healthy-active-salonpas/
(last accessed March 19, 2021)
[8] https://us.hisamitsu/blog/lidocaine-for-pain-relief/

1

***The Product is Mislabeled as Being "Maximum Strength"***

2

     30.    One attribute that consumers specifically value when purchasing any

3

pain-relieving product is the strength of the dose.[9]

4

     31.    Aware of this consumer preference, Defendant specifically advertises its

5

Product as a "MAXIMUM STRENGTH" lidocaine product:

6

7

8

9

10

11



12

13

14

15

16

17

18

19

20

21

22

23

24

---

[9] Strength of dose is so important that nearly every manufacturer of common pain-relieving products emphasize it. *See* https://www.tylenol.com/products/tylenol-extra-strength-caplets?utm_source=google&utm_medium=cpc&utm_campaign=GO-USA-ENG-PS-Tylenol-BC-EX-RN-Brand-Core+EST&utm_content=Core&utm_term=extra+tylenol&gclid=Cj0KCQjwi7yCBhDJARIsAMWFScPTqYK8J3go53nS0bag4R7EVHQZ7ogd_3MoAMUKWoVzH4FMj8sQj9kaAtbXEALw_wcB&gclsrc=aw.ds&? (Tylenol extra strength); *see also* https://www.bayeraspirin.com/products/bayer-extra-strength-aspirin (extra strength aspirin).

25

26

27

28

32.     The "MAXIMUM STRENGTH" representation is located on the front label of the Product in bold lettering with yellow highlight that instantly catches the eye of all reasonable consumers, including Plaintiff and Class Members.

33.     Defendant, however, is well aware that its Product is not a maximum strength lidocaine product.

34.      Defendant's over the counter Product contains only 4% lidocaine while prescription patches contain 5%.[10]

35.     So, consumers can obtain a stronger dose lidocaine patch if they obtain a prescription from their medical provider.

36.     But rather than accurately advertise its Product through its labeling, Defendant preys on consumers' desire for maximum pain relief to drive substantial profits.

### *Plaintiff's Experiences Using Defendant's Product*

37.     Plaintiff Doss is a resident and citizen of Richmond, California who purchased Defendant's Product on a recurring basis for many years. She purchased the Product at national retailers including CVS, Walmart, and Walgreens. She used Defendant's Product daily for months to help with her back pain. She last purchased the product in 2021 and paid approximately $10 to $15.

38.     Prior to purchasing Defendant's Product, Plaintiff read Defendant's representation that the product was "Maximum Strength" on the Product's packaging and specifically relied on this representation in deciding to purchase Defendant's Product.

---

[10] "This article discusses lidocaine 5% patch products available by your doctor's prescription. While there are similar over-the-counter (OTC) varieties available, those contain a lower percentage of lidocaine." *See* https://www.spineuniverse.com/treatments/medication/prescription-lidoderm-patches-may-help-relieve-back-pain.

39.     Plaintiff Doss paid a premium price to purchase Defendant's Product because of these strength claims but stopped purchasing when she learned she in fact could get an even stronger lidocaine patch from her doctor.

40.     Plaintiff would not have purchased the Defendant's Product if she had been aware that its "Maximum Strength" representations were not true, or alternatively, she would have paid less for this Product. If Defendant's Product was truthful regarding its strength claim, Plaintiff would consider buying it in the future.

41.     Furthermore, Plaintiff believed that based on Defendant's marketing, advertising, and labeling that the Product is prescription-strength and compliant with FDA regulations for such a prescription back patch, or at a very minimum is equal in strength, efficacy, and safety as an FDA regulated and prescribed back patch.

42.     Plaintiff would not have purchased Defendant's Product if she had been aware that the Product is neither FDA-approved nor FDA-complaint. If Defendant's Product was truthful regarding this information, Plaintiff would consider buying it in the future.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action on behalf of herself and a class ("Nationwide Class" or "Class") defined as follows:

> All persons residing in the United States who, during the maximum period of time permitted by law, purchased Salonpas® Lidocaine Pain Relieving Gel-Patch primarily for personal, family or household purposes, and not for resale.

44.     Plaintiff Doss further brings this action on behalf of herself and the members of the following subclass ("California Subclass"):

> All persons residing in California who, during the maximum period of time permitted by law, purchased Salonpas®

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lidocaine Pain Relieving Gel-Patch primarily for personal, family or household purposes, and not for resale.

45.     Plaintiff reserves the right to amend the Class definition or Subclass definitions at a later date as necessary to conform with facts learned through discovery.

46.     Specifically excluded from the Class and Subclass definitions are (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

47.     As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and all Subclasses, including Plaintiff Doss.

48.     Plaintiff seeks only damages and equitable relief on behalf of herself and the Class Members. Plaintiff disclaims any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by herself and/or the Class Members.

49.     <u>Numerosity</u>: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

50.     <u>Typicality</u>: The claims of the representative Plaintiff is typical in that Plaintiff, like all Class Members, purchased Salonpas® Lidocaine Pain Relieving Gel-Patch that was marketed and distributed by Defendant. Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that, *inter alia*, she purchased a product that contained lower strength Lidocaine than was marketed and advertised. Furthermore, the factual bases of Defendant's misconduct are common to

all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to Plaintiff and all Class Members.

51.    Commonality: There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any individual questions. These common legal and factual issues include the following:

    a.  Whether Defendant's "Maximum Strength" representation is false and/or misleading;

    b.  Whether Defendant knowingly sold its Product which it knew did not contain maximum strength Lidocaine;

    c.  Whether the claims Defendant made and is making regarding the Product are unfair or deceptive; specifically, whether the Product was illegally labeled in violation of applicable FDA regulations;

    d.  Whether Defendant was unjustly enriched by consumers paying a price premium for a less than maximum strength Lidocaine product;

    e.  Whether Defendant's actions as described above violated the various state consumer protection laws as alleged herein;

    f.  Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

52.    Adequate Representation: Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

53.    Predominance and Superiority: Plaintiff and Class Members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no

effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## CAUSES OF ACTION

## COUNT I
## UNJUST ENRICHMENT
### (Plaintiff individually, and on Behalf of the Nationwide Class)

54.    Plaintiff brings this count on behalf of herself and the Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

55.    Plaintiff and Class Members conferred benefits on Defendant by purchasing Defendant's Product at a premium price.

56.    Defendant had knowledge of such benefits.

57.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members purchasing its Product. Defendant retaining this money under these circumstances is unjust and inequitable because Defendant falsely and misleadingly labeled its lidocaine Product as one having "Maximum Strength." Such omissions and misrepresentations caused injuries to Plaintiff and Class Members because they would not have purchased (or paid a premium) for Defendant's Product had they known the true facts regarding the strength of the lidocaine.

58.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class Members for unjust enrichment, as ordered by the Court.

## COUNT II
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

### (Plaintiff individually and on Behalf of the California Subclass)

59.     Plaintiff Doss brings this Count on behalf of herself and the California Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

60.     Defendant is subject to the Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

61.     Defendant violated the "unlawful" prong of the UCL by violating California's False Advertising Law ("FAL") as described in Count III, below.

62.     Defendant's conduct, described herein, violated the "unfair" prong of the UCL because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

63.     Defendant's conduct with respect to the labeling, advertising, and sale of the Product was unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the FAL.

64.     Defendant's conduct with respect to the labeling, advertising, and sale of the Product was unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

65.     Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL.

66.     A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test. As set

forth herein, Defendant's claims relating strength of the Lidocaine on the Product's labeling were false and the continued production of the Product despite violating FDA regulations is likely to mislead or deceive the public.

67.     Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Product to unwary consumers.

68.     Defendant's conduct caused substantial injury to Plaintiff and the other Class Members. Plaintiff has suffered injury in fact as a result of Defendant's unlawful conduct. Plaintiff and California Subclass Members were damaged because they would not have purchased (or paid a premium) for Defendant's Product had they known the true facts regarding the ingredients and its violation of FDA regulations.

69.     In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order requiring Defendant to commence a corrective advertising campaign.

70.     Plaintiff and the California Subclass also seek an order for and restitution of all monies from the sale of the Product, which were unjustly acquired through acts of unlawful competition.

## COUNT III
## CALIFORNIA FALSE ADVERTISING LAW
### Cal. Bus. & Prof. Code § 17500 ("FAL")
### (Plaintiff individually and on Behalf of The California Subclass)

71.     Plaintiff Doss brings this Count on behalf of herself and the California Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

72.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

73.     It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

74.     As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to its Product's Lidocaine content misled consumers acting reasonably, as stated above.

75.     Plaintiff and California Subclass Members suffered injuries in fact as a result of Defendant's actions as set forth herein because they purchased the Defendant's Product in reliance on Defendant's false and misleading labeling claims concerning, among other things, the Lidocaine content as stated above.

76.     Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

77.     Defendant profited from its sale of the falsely and deceptively advertised Product to unwary consumers.

78.     As a result, Plaintiff and the California Subclass are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

79.     Plaintiff and the California Subclass were damaged because they would not have purchased (or paid a premium) for Defendant's Product had they known the true facts regarding the Product's contents and/or ingredients.

//

//

//

//

//

**COUNT IV**
## CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### Cal. Civ. Code § 1750 et seq. ("CLRA")
**(Plaintiff individually and on Behalf of The California Subclass)**

80.     Plaintiff Doss brings this Count on behalf of herself and the California Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

81.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

82.     Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Product for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

83.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

84.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

85.     Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will provide a letter to Defendant concurrently with the filing of this Class Action Complaint or shortly thereafter with notice of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices. If Defendant does not thereafter correct its business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

86.     Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, her reasonable attorney fees and costs, and any other relief that the Court deems proper.

### COUNT V
### FRAUD
### (Plaintiff individually, and on Behalf of the Nationwide Class and/or California Subclass)

87.     Plaintiff Doss brings this Count on behalf of herself and the Nationwide Class and/or California Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

88.     As alleged herein, Hisamitsu knowingly made material misrepresentations and omissions regarding the Product on the Product's labeling and packaging, in the Product's advertisements, and/or on its website, specifically the Maximum Strength representation alleged more fully herein.

89.     Hisamitsu made these material Maximum Strength representations and omissions in order to induce Plaintiff and putative Class Members to purchase the Product.

90.     Hisamitsu knew the misrepresentations and omissions regarding the Product were false and misleading but nevertheless made such representations and omissions through the marketing, advertising and on the Product's labeling. In

reliance on these representations and omissions, Plaintiff and putative Class Members were induced to, and did, pay monies to purchase the Product.

91.     Had Plaintiff and the Class known the truth about the Product, they would not have purchased the Product.

92.     As a proximate result of the fraudulent conduct of Defendant, Hisamitsu, Plaintiff and the putative Class paid monies to Defendant, through its regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant, as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class members;

b. For an order declaring that Defendant's conduct violated the statutes referenced herein;

c. For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

d. For prejudgment interest on all amounts awarded;

e. For an order of restitution and all other forms of equitable monetary relief, except for monetary relief under the CLRA; and

f. For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: March 19, 2021                    Respectfully submitted,

                                         */s/ Jonathan Shub*
                                         Jonathan Shub (SBN 237708)
                                         Kevin Laukaitis*
                                         **SHUB LAW FIRM LLC**
                                         134 Kings Highway E, 2nd Floor
                                         Haddonfield, NJ 08033
                                         T: 856-772-7200
                                         F: 856-210-9088
                                         jshub@shublawyers.com
                                         klaukaitis@shublawyers.com

                                         Nick Suciu*
                                         **BARBAT MANSOUR SUCIU & TOMINA PLLC**
                                         6905 Telegraph Rd., Suite 115
                                         Bloomfield Hills, Michigan 48301
                                         Tel: (313) 303-3472
                                         Email: nicksuciu@bmslawyers.com

                                         Charles E. Schaffer*
                                         David C. Magagna Jr.*
                                         **LEVIN, SEDRAN & BERMAN, LLP**
                                         510 Walnut Street, Suite 500
                                         Philadelphia, PA 19106
                                         Phone: (215) 592-1500
                                         Fax: (215) 592-4663
                                         cschaffer@lfsblaw.com
                                         dmagagna@lfsblaw.com

                                         **Pro Hac Vice* Application Forthcoming

                                         *Attorneys for Plaintiff and Putative Class Members*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Jonathan Shub, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am an attorney at the Shub Law Firm LLC, counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct that this declaration was executed at Haddonfield, New Jersey this 19th day of March, 2021.

*/s/ Jonathan Shub*
Jonathan Shub