Kevin Laukaitis*
Jonathan Shub (State Bar No. 237708)
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033
T: 856-772-7200
F: 856-210-9088
klaukaitis@shublawyers.com
jshub@shublawyers.com

*Admitted Pro Hac Vice*
*Attorneys for Plaintiffs and Putative Class Members*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERI HRAPOFF, JODY HESSEL, and LAURIE PETITTI, individually and on behalf of themselves and all others similarly situated, | Case No.  4:21-cv-01943-JST |
| | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| HISAMITSU AMERICA, INC. | |
| Defendant. | |

Plaintiffs, Cheri Hrapoff, Jody Hessel, and Laurie Petitti ("**Plaintiffs**"), on behalf of themselves and all others similarly situated, bring this class action against Defendant, Hisamitsu America, Inc., ("**Defendant**" or "**Hisamitsu**"), and allege on personal knowledge, investigation of their counsel, and on information and belief as follows:

## **INTRODUCTION**

1.     Defendant, Hisamitsu offers a variety of over-the-counter and prescription products including transdermal patches and skin care products. Defendant's over-the-counter, Salonpas-branded products include a range of external pain relieving patches and aerosols for pain associated with or caused by ailments such as arthritis, backache, muscle strains, sprains and bruises.

2.     Particularly, Defendant markets, distributes, and sells Salonpas® Lidocaine Pain Relieving Gel-Patch ("the **Product**").[1]

3.     Nearly every individual suffers muscle aches and pains and seeks relief for this common problem.

4.     When consumers purchase pain-relieving products, the strength of the dose is an important purchasing consideration. In fact, consumers willingly pay a

---

[1] The Product is manufactured by Defendant's Japanese parent company.

premium for pain-reliving products that represent and/or claim that they have strong doses and/or are maximum strength.[2]

5.      Defendant takes advantage of this consumer preference for strong doses by prominently representing where the one place that every consumer looks when purchasing a product – the packaging and labels themselves. In fact, Defendant touts its representation and claim right on the front of its Product's label that the Product is a "Maximum Strength" lidocaine product.

6.      Consumers including Plaintiffs lack the scientific knowledge necessary to determine whether the Product is a "Maximum Strength" lidocaine product or to ascertain the true nature of the quality or strength of the Product. As such, reasonable consumers must and do rely on manufacturers, like Defendant, to be transparent and properly disclose on the packaging all material information regarding the Product and its dose and strength.

7.      However, Defendant makes this "Maximum Strength" representation in a knowingly false and deceptive manner because Defendant's Product contains only

---

[2] Defendant's non-lidocaine pain reliving patches sell for approximately $0.16 per patch while the lidocaine ones sell for $1.67. *See* https://www.walgreens.com/store/c/salonpas-pain-relieving-gel-patch-with-maximum-strength-lidocaine/ID=prod6334797-product (for lidocaine version) and https://www.amazon.com/Salonpas-Pain-Relieving-Patches-Count/dp/B01AB4U6PI/ref=pd_bxgy_img_2/143-6299856-0809858?_encoding=UTF8&pd_rd_i=B01AB4U6PI&pd_rd_r=7f53c71a-2bf2-4e66-952b-7737ecc79229&pd_rd_w=4XEWI&pd_rd_wg=q6AkY&pf_rd_p=f325d01c-4658-4593-be83-3e12ca663f0e&pf_rd_r=2RJPAYXKMXBZVPYRTKTB&psc=1&refRID=2RJPAYXKMXBZVPYRTKTB (for the non-lidocaine version). Plaintiffs only use this pricing information as an example to plausibly plead that Defendant does indeed charge a large premium for its Product. The specific premium on a granular level and the manner by which that price premium will be determined will be set forth in the case by an expert and after discovery. (Listings last accessed September 13, 2021).

4% lidocaine while similar prescription patches manufactured by at least one of Defendant's competitors contains 5% lidocaine.

8. Moreover, Defendant has not only represented that its Product is a "Maximum Strength" lidocaine product, but has also omitted from the Product's labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

9. Defendant manufactures, sells, and distributes the Product employing a marketing and advertising campaign centered around claims that appeal to consumers who Defendant knows seek out strong doses of lidocaine to relieve their back pain and aches by touting its Product as "Maximum Strength". As such, reasonable consumers, like Plaintiffs, reasonably believe that they are purchasing a Lidocaine product which is at maximum strength, i.e. the highest dosage they can buy.

10. Defendant's multiple and prominent systematic mislabeling of the Product forms a pattern of unlawful and unfair business practices that deceives and harms consumers and the public.[3]

11. Accordingly, Plaintiffs bring this suit on behalf of themselves and similarly situated consumers who purchased Defendant's Product. Plaintiff and Class Members were damaged because they would not have purchased (or would not have

---

[3] *See Scilex Pharmaceuticals Inc. v. Sanofi-Aventis U.S. LLC, et al.*, 21-cv-01280-JST, Dkt No. 86, at 6 (N.D. Cal. Aug. 16, 2021) (Tigar, J.).

paid a premium) for Defendant's Product had they known the true facts regarding the Product's "Maximum Strength" representations and omissions.

12.     For all the reasons set forth herein, including but not limited to Defendant's misrepresentations and omissions regarding its "Maximum Strength" claims, Plaintiffs seek relief in this action individually, and as a class action on behalf of similarly situated purchasers of Defendant's Product, for: (i) breach of express warranty; (ii) breach of implied warranty of merchantability; (iii) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL"); (iv) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"); (v) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"); (vi) violation of New York's Deceptive Trade Act, General Business Law § 349, *et seq.*; (vii) violation of New York's Deceptive Sales Act, General Business Law § 350, *et seq.*; (viii) violation of Illinois' Consumer Fraud Act, 815 ILCS §§ 505/1, *et seq.*;  (ix) violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/2, *et seq.*; (x) common law fraud; and (xi) unjust enrichment.

## **PARTIES**

13.     Plaintiff Cheri Hrapoff is a citizen of California residing in Ben Lomond. She purchased Defendant's Product during the applicable statute of limitations periods. Notably, her most recent purchase was April 8, 2021 at a CVS Pharmacy in Scotts Valley, CA.

14.     Plaintiff Jody Hessel is a citizen of New York residing in Smithtown. He purchased Defendant's Product during the applicable statute of limitations periods at his local CVS Pharmacy in and around Smithtown, New York.

15.     Plaintiff Laurie Petitti is a citizen of Illinois residing in Algonquin. She purchased Defendant's Product on numerous occasions during the applicable statute of limitations periods. Notably, her most recent purchase was July 19, 2021 at a Walmart in Algonquin, IL.

16.     Hisamitsu is a California corporation, with its principal place of business at 100 Campus Drive, Suite 117, Florham Park, New Jersey 07932. Defendant markets, distributes, and sells the Product, which is manufactured by its parent company, Hisamitsu Pharmaceutical Co., Inc. Defendant Hisamitsu markets, distributes and sells the Product through drug stores, mass retailers, and online retailers throughout the United States.

17.     Plaintiffs reserve the right to amend this First Amended Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum

or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from the Defendant.

19.    Defendant has sufficient minimum contacts with California to be subject to this Court's personal jurisdiction. Defendant is registered to do business here. Defendant also intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its Product and numerous other products, which renders this Court's exercise of jurisdiction necessary and proper.

20.    In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendant transacts business in this District, and at least one Plaintiff resides in this District.

## FACTS COMMON TO ALL CLAIMS

21.    Lidocaine is the active ingredient in Defendant's Product, and it forms the basis for Defendant's "Maximum Strength" misrepresentations on the Product's front labeling, omissions, and overall advertising and marketing campaign.

22.    "Lidocaine belongs to the family of medicines called local anesthetics. This medicine prevents pain by blocking the signals at the nerve endings in the skin."[4]

23.    Lidocaine is commonly used in products such as Defendant's Product to help with body soreness, aches and pain.

---

[4] https://www.mayoclinic.org/drugs-supplements/lidocaine-topical-application-route/description/drg-20072776 (Last Accessed September 13, 2021).

24.     Lidocaine is also a non-narcotic pain reliever, which has led to a surge in the popularity of products that contain it.[5]   Indeed, Defendant has benefitted immensely from selling the Product. For example, Defendant's sales in 2019 alone were approximately $121 million.[6]

### *Defendant's Product Prominently Features the "Maximum Strength" Claim*

25.     At all relevant times, Defendant has marketed its Product in a consistent and uniform manner nationwide. Defendant sells the Product in all 50 states in brick-and-mortar stores and through online retailers.

26.     Aware of the consumer preference for strong doses of lidocaine in pain-relieving products to alleviate their pain, aches and soreness, Defendant specifically advertises its Product as a "MAXIMUM STRENGTH"[7] lidocaine product:

---

[5] https://www.globenewswire.com/en/news-release/2020/06/24/2052868/0/en/Topical-Pain-Relief-Market-to-Reach-13-276-million-by-2025-at-7-4-CAGR-Says-AMR.html ("The growth of topical pain relief market include increase in prevalence of arthritis, diabetic neuropathy, and other bone disorders across the globe, rise in geriatric population, *fewer side effects caused by topical pain relief as compared to oral medications*, and high adoption of topical pain relief products by sportsperson.") (emphasis added) (Last Accessed September 13, 2021).

[6] https://www.statista.com/statistics/326890/external-analgesic-rubs-brands-sales-in-the-us/ (Last Accessed September 13, 2021).

[7] Upon information and belief, after filing of the original Complaint in this case, Defendant attempted to correct its false and misleading representations and omissions by changing the Product's label. The label shown below represents the labeling present at the time of filing and that Plaintiffs and the proposed classes read and relied on. Since the filing of the initial Complaint in this case, Defendant, upon information and belief, now includes an asterix in the top left next to the "MAXIMUM STRENGTH" representation which reads: "OTC topical analgesics in patch category."  *See*  https://us.hisamitsu/product/salonpas-lidocaine-pain-relieving-gel-patch  (Last Accessed September 13, 2021).

27.    The "MAXIMUM STRENGTH" representation is prominently featured right on the front label of the Product in bold lettering with yellow highlight that instantly catches the eye of all reasonable consumers, including Plaintiffs and Class Members.

28.    Defendant, however, is well aware that its Product is not a "Maximum Strength" lidocaine product and deceives trusting reasonable consumers like Plaintiffs to believe that they are in fact purchasing such a Product while omitting from the Product's labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

29.    Indeed, Defendant's over the counter Product contains only 4% lidocaine while competing prescription patches contain 5% lidocaine.[8]

_____

[8] "This article discusses lidocaine 5% patch products available by your doctor's prescription. While there are similar over-the-counter (OTC) varieties available, those contain a lower percentage of lidocaine." *See* https://www.spineuniverse.com/treatments/medication/prescription-lidoderm-patches-may-help-relieve-back-pain (last accessed September 13, 2021).

30.     So, consumers can actually obtain a stronger dose comparable lidocaine patch that is available in the market.

31.     As such, Defendant's Product is not a "Maximum Strength" lidocaine product as advertised.

32.     But rather than accurately advertise its Product through its labeling and advertising, Defendant preys on consumers' desire for maximum pain relief to drive substantial profits.[9]

33.     All reasonable consumers, including Plaintiffs read and relied on Hisamitsu's "Maximum Strength" representations when purchasing the Product.

34.     Defendant's "Maximum Strength" representation was material to Plaintiffs' and Class Members' decision to purchase the Product.

35.     Defendant's marketing efforts are made in order to—and do in fact—induce consumers to purchase the Product at a premium because consumers believe they are getting a lidocaine product with "Maximum Strength."

36.     As shown throughout this First Amended Complaint, however, Defendant's Product is *not* a "Maximum Strength" lidocaine product. Defendant's representations and omissions are false and misleading.

37.     Defendant intended for Plaintiffs and Class Members to be deceived or misled by its misrepresentations and omissions.

38.     Defendant's deceptive and misleading practices proximately caused harm to Plaintiffs and the Class.

---

[9] In a blog post on its website, Defendant employs a spokesperson, "Dr. Bob Arnot" who claims that its Product has" 4% of lidocaine which I'd argue is close to the 5% lidocaine patch you would get with a prescription." This admission that comparable and competitive back patch pain relief products exist with a higher lidocaine content shows that Defendant was aware that its Product was not "Maximum Strength" as Defendant advertised. Despite this blog posting's date of October 16, 2017, Defendant continued to knowingly advertise its less-than maximum strength, 4% lidocaine product as "Maximum Strength" for years afterward. Since the filing of the original Complaint in March 2021, Defendant has removed this blog posting from its website.

39.     Plaintiffs and Class Members would not have purchased the Product, or would have not paid as much for the Product, had they known the truth about the mislabeled and falsely advertised Product.

### ***Plaintiffs' Experiences Purchasing Defendant's Mislabeled Product***

### ***Plaintiff Cheri Hrapoff***

40.     Plaintiff Hrapoff is a resident and citizen of Ben Lomond, California who purchased Defendant's Product on a recurring basis throughout the class period. She purchased the Product at national retailers, including a CVS in Scotts Valley, CA. She last purchased the product on April 8, 2021 and paid approximately $8.69.

41.     Prior to purchasing Defendant's Product, Plaintiff Hrapoff read and reviewed information about the Product, including the fact that the Product was being sold for personal use, and not resale.

42.     When purchasing her Product, Plaintiff Hrapoff also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and omissions and warranties made by Defendant that the Product was a "Maximum Strength" lidocaine product. Plaintiff Hrapoff relied on these representations, omissions and warranties in deciding to purchase Defendant's Product.

43.     Accordingly, these representations, omissions and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known these representations were not true.

44.     However, Plaintiff Hrapoff has an intention to purchase the Product in the future if the products are truthfully labeled and not misleadingly advertised.

45.     In making her purchases, Plaintiff Hrapoff paid a substantial price premium due to the false and misleading "Maximum Strength" representations and omissions.

46.     However, Plaintiff Hrapoff did not receive the benefit of her bargain because Defendant's Product is not a "Maximum Strength" lidocaine product, and/or

because Defendant omitted from the Product's labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

47.     Plaintiff Hrapoff also understood that her Product came with packaging and other materials prepared by Defendant, including representations and warranties regarding the Product being a "Maximum Strength" lidocaine product.

48.     Plaintiff Hrapoff also understood that in making the sale, her retailer was acting with the knowledge and approval of Defendant and/or as the agent of Defendant.

49.     Plaintiff Hrapoff would not have purchased the Defendant's Product if she had been aware that its "Maximum Strength" representations and omissions were not true, or alternatively, she would have paid less for this Product.

50.     Excluding tax, these Products cost between $8.69 and $9.99 and vary in price depending on quantity of patches per box. The price that Plaintiff Hrapoff paid, $8.69, is at a premium compared to other similar products.

***Plaintiff Jody Hessel***

51.     Plaintiff Hessel is a resident and citizen of Smithtown, New York who purchased Defendant's Product on a recurring basis during the class period. He purchased the Product at various national retailers. He last purchased the product at a local CVS Pharmacy, in or around Smithtown, New York for approximately $9.99.

52.     Prior to purchasing Defendant's Product, Plaintiff Hessel read and reviewed information about the Product, including the fact that the Product was being sold for personal use, and not resale.

53.     When purchasing his Product, Plaintiff Hessel also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations, omissions and warranties made by Defendant that the Product was a "Maximum Strength" lidocaine product. Plaintiff Hessel relied on

these representations, omissions and warranties in deciding to purchase Defendant's Product.

54.     Accordingly, these representations, omissions and warranties were part of the basis of the bargain, in that he would not have purchased the Product on the same terms had she known these representations were not true.

55.     However, Plaintiff Hessel has an intention to purchase the Product in the future if the products are truthfully labeled and not misleadingly advertised.

56.     In making his purchases, Plaintiff Hessel paid a substantial price premium due to the false and misleading "Maximum Strength" representations and omissions.

57.     However, Plaintiff Hessel did not receive the benefit of his bargain because Defendant's Product is not a "Maximum Strength" lidocaine product, and/or because Defendant omitted from the Product's labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

58.     Plaintiff Hessel also understood that his Product came with packaging and other materials prepared by Defendant, including representations and warranties regarding the Product being a "Maximum Strength" lidocaine product.

59.     Plaintiff Hessel also understood that in making the sale, his retailer was acting with the knowledge and approval of Defendant and/or as the agent of Defendant.

60.     Plaintiff Hessel would not have purchased the Defendant's Product if he had been aware that his "Maximum Strength" representations and omissions were not true, or alternatively, he would have paid less for this Product.

61.     Excluding tax, these Products cost between $8.69 and $9.99 and vary in price depending on quantity of patches per box. The price that Plaintiff Hessel paid, $9.99, is at a premium compared to other similar products.

*Plaintiff Laurie Petitti*

62.     Plaintiff Petitti is a resident and citizen of Algonquin, Illinois who purchased Defendant's Product on a recurring basis during the class period. She purchased the Product at various national retailers. She last purchased the Product on July 19, 2021 at a Walmart in Algonquin, IL for $9.92.

63.     Prior to purchasing Defendant's Product, Plaintiff Petitti read and reviewed information about the Product, including the fact that the Product was being sold for personal use, and not resale.

64.     When purchasing her Product, Plaintiff Petitti also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations, omissions and warranties made by Defendant that the Product was a "Maximum Strength" lidocaine product. Plaintiff Petitti relied on these representations, omissions and warranties in deciding to purchase Defendant's Product.

65.     Accordingly, these representations, omissions and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known these representations were not true.

66.     However, Plaintiff Petitti has an intention to purchase the Product in the future if the products are truthfully labeled and not misleadingly advertised.

67.     In making her purchases, Plaintiff Petitti paid a substantial price premium due to the false and misleading "Maximum Strength" representations and omissions.

68.     However, Plaintiff Petitti did not receive the benefit of her bargain because Defendant's Product is not a "Maximum Strength" lidocaine product, and because Defendant omitted from the Product's labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

69.     Plaintiff Petitti also understood that her Product came with packaging and other materials prepared by Defendant, including representations, omissions and warranties regarding the Product being a "Maximum Strength" lidocaine product.

70.     Plaintiff Petitti also understood that in making the sale, her retailer was acting with the knowledge and approval of Defendant and/or as the agent of Defendant.

71.     Plaintiff Petitti would not have purchased the Defendant's Product if she had been aware that its "Maximum Strength" representations and omissions were not true, or alternatively, she would have paid less for this Product.

72.     Excluding tax, these Products cost between $8.69 and $9.99 and vary in price depending on quantity of patches per box. The price that Plaintiff Petitti paid, $9.92, is at a premium compared to other similar products.

## FED. R. CIV. P. 9(b) ALLEGATIONS

73.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

74.     **WHO**: Defendant, Hisamitsu America, Inc., made material misrepresentations and/or omissions of fact in its labeling and marketing of the Product by representing that the Product is a "Maximum Strength" lidocaine product.

75.     **WHAT**: Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product is a "Maximum Strength" lidocaine product. Defendant omitted from Plaintiffs and Class Members that the Product is not a "Maximum Strength" lidocaine product because other lidocaine products exist in the market that contain a higher amount (i.e. 5%) of lidocaine. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant

has and contains to represent that the Product is a "Maximum Strength" lidocaine product when it is not, and has omitted from the Product's labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

76.   **WHEN**: Defendant made material misrepresentations and/or omissions detailed herein, including that the Product is a "Maximum Strength" lidocaine product, continuously throughout the applicable Class period(s).

77.   **WHERE**: Defendant's material misrepresentations and omissions, that the Product is a "Maximum Strength" lidocaine product were made on the front labeling and packaging of the Product and throughout Defendant's advertising. Defendant's "Maximum Strength" front label misrepresentations are written in blond font and highlighted in bright yellow, which instantly catches the eye of all reasonable consumers, including Plaintiffs, at the point of sale in every transaction. The Product is sold in brick and mortar and online retailers nationwide.

78.   **HOW**: Defendant made written misrepresentations right on the front label of the Product that the Product was a "Maximum Strength" lidocaine product even though other stronger lidocaine products are available in the market. As such, Defendant's "Maximum Strength" representations are false and misleading. Moreover, Defendant omitted from the Product's labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%). And as discussed in detail throughout this First Amended Complaint, Plaintiffs and Class Members read and relied on Defendant's "Maximum Strength" representations and omissions before purchasing the Product.

79.   **WHY**: Defendant misrepresented its Product as being a "Maximum Strength" lidocaine product and omitted from the Product's labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%) for the express purpose of inducing Plaintiffs and Class Members to purchase the Product at a substantial price premium. As such, Defendant

profited by selling the misrepresented Product to at least thousands of consumers throughout the nation.

## CLASS ACTION ALLEGATIONS

80.     Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action on behalf of themselves and the members of the follow class (the "Nationwide Class"):

> All persons residing in the United States who, during the maximum period of time permitted by law, purchased the Product primarily for personal, family or household purposes, and not for resale.

81.     Plaintiff Hrapoff also brings this action on behalf of herself and the members of the following subclass (the "California Subclass"):

> All persons residing in California who, during the maximum period of time permitted by law, purchased the Product primarily for personal, family or household purposes, and not for resale.

82.     Plaintiff Hessel also brings this action on behalf of himself and the members of the following subclass (the "New York Subclass"):

> All persons residing in New York who, during the maximum period of time permitted by law, purchased the Product primarily for personal, family or household purposes, and not for resale.

83.     Plaintiff Petitti also brings this action on behalf of herself and the members of the following subclass (the "Illinois Subclass"):

> All persons residing in Illinois who, during the maximum period of time permitted by law, purchased the Product primarily for personal, family or household purposes, and not for resale.

84.     Plaintiffs reserve the right to amend the Class definitions or Subclass definitions at a later date as necessary to conform with facts learned through discovery.

85.     Specifically excluded from the Class and Subclass definitions are (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

86.     As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and all Subclasses, including Plaintiffs Hrapoff, Hessel, and Petitti.

87.     Plaintiffs seek only damages and equitable relief on behalf of themselves and the Class Members. Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by themselves and/or the Class Members.

88.     <u>Numerosity</u>: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. On information and belief, members of the Class number in at least the thousands. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

89.     <u>Typicality</u>: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased the Product that was marketed, distributed, and/or sold by Defendant. Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that, *inter alia*, they purchased the Product that was represented as being a "Maximum Strength" lidocaine product when that representation is false and misleading. Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of

fraudulent, deliberate, and negligent misconduct resulting in injury to Plaintiffs and all Class Members.

90.     Commonality: There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any individual questions. These common legal and factual issues include the following:

a.   Whether Defendant's "Maximum Strength" representations and/or omissions regarding the Product are false and/or misleading;

b.   Whether Defendant knowingly sold its Product which it knew did not contain maximum strength lidocaine;

c.   Whether Defendant engaged in false and/or deceptive advertising;

d.   Whether Plaintiffs and the Class Members did not receive the benefit of their bargain when purchasing the Product;

e.   Whether Defendant was unjustly enriched by consumers paying a price premium for a less than "Maximum Strength" lidocaine product;

f.   Whether Defendant's actions as described above violated the various state consumer protection laws as alleged herein;

g.   Whether Defendant has breached express and implied warranties in the sale and marketing of the Product;

h.   Whether Plaintiffs and Class Members have sustained monetary loss and the proper remedy for and measure of that loss;

i.   Whether Defendant's conduct violated public policy; and

j.   Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

91.    <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including mislabeled consumer product goods, and Plaintiffs intend to prosecute this action vigorously.

92.    <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

93.    In addition, Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive equitable relief with respect to the Class as a whole. In addition, Plaintiffs have an intention to purchase the Product in the future if the Product is truthfully labeled and not misleadingly labeled.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
**(On Behalf of All Plaintiffs and the Nationwide Class, or Alternatively, the California, New York, and Illinois Subclasses)**

94.     Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

95.     Plaintiffs Cheri Hrapoff, Jody Hessel, and Laurie Petitti bring this count on behalf of themselves, the proposed Nationwide Class, California Subclass, New York Subclass, and Illinois Subclass against Defendant.

96.     Express warranties by sellers of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the basis of the bargain. Such warranties can also be created based upon descriptions of the goods which are made as part of the basis of the bargain that the goods shall conform to the description. *See*, *e.g.*, Cal. Com. Code § 2313(1)(a)-(b); N.Y. U.C.C. Law § 2- 313(1)(a)-(b); and 810 ICLS 5/2-313(1)(a)-(b).

97.     Defendant, as the marketer, distributor and/or seller, expressly warranted that the Product was a "Maximum Strength" lidocaine product.

98.     Each of the Plaintiffs formed a contract with Defendant at the time they purchased the Products. The terms of that contract include the promises and affirmations of fact that Defendant makes through an extensive, uniform, nationwide marketing campaign, and on its product labels. Among other affirmations of fact and promises described herein, Defendant represents that the Product is a "Maximum Strength" lidocaine product.

99.     Defendant's express warranties, and its affirmations of fact and promises made to Plaintiffs and Class Members regarding the Product became the basis of the bargain between Defendant and Plaintiffs and the Classes, thereby creating an express

warranty that the Product would conform to those affirmations of fact, representations, promises, and descriptions.

100.   Contrary to Defendant's affirmations of fact and promises, the Product is not a "Maximum Strength" lidocaine product. Defendant breached the express warranties and/or contract obligations by placing the Product into the stream of commerce and selling the Product to consumers, when the Product is not a "Maximum Strength" lidocaine product, because other comparable lidocaine products exist in the market that contain more lidocaine than Defendant's product.

101.   As such, Defendant's Product does not conform to the express warranties because the representations are false or misleading.

102.   At all times relevant herein, Defendant was aware, or should have been aware, of the misrepresentations regarding the Product.

103.   Defendant made the "Maximum Strength" representation with the intention that Plaintiffs and Class members would rely on the "Maximum Strength" representation. Plaintiffs and Class members did, in fact, rely on Defendant's "Maximum Strength" representation when deciding to purchase the Product.

104.   Where required, Defendant's affirmations of fact and promises were material to Plaintiffs and Class Members decisions to purchase the Product.

105.   All conditions precedent to Defendant's liability for its breach of express warranty have been performed by Plaintiffs or Class Members.

106.   Defendant received direct electronically mailed notice from Plaintiffs' counsel related to the claims at issue in this First Amended Complaint, and specifically Defendant's breaches of its warranties. Specifically, as early as March 19, 2021, the original Complaint filed in this matter operated as sufficient notice to Defendant to inform it of its breaches of express warranties. Moreover, Plaintiffs' counsel served via e-mail Defendant's counsel with pre-suit notice of its breaches of warranties on behalf of Plaintiffs and Class Members: on August 13, 2021 by Plaintiff Hrapoff; on August 16, 2021 by Plaintiff Hessel; and on August 18, 2021 by Plaintiff Petitti.

107. Defendant's counsel acknowledged receipt of Plaintiffs' pre-suit notice letters by responding to Plaintiffs' counsel's email(s) regarding service of the pre-suit notice letters.

108. Defendant also has notice of the conduct related to its breach of warranties by way of the lawsuit that was filed: *Scilex Pharmaceuticals, Inc. v. Sanofi-Aventis U.S. LLC, et al.*, 4:21-cv-01280 (N.D. Cal.) (filed on February 23, 2021).

109. As a direct and proximate result of Defendant's breaches of express warranty, Plaintiffs and Class Members have been damaged because they did not receive the Product as specifically warranted by Defendant. Plaintiffs and Class Members did not receive the benefit of the bargain and suffered damages by purchasing the misrepresented Product.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**(On Behalf of All Plaintiffs, the Nationwide Class, or alternatively, the California Subclass, New York Subclass, and Illinois Subclass)**

110. Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

111. Plaintiffs Cheri Hrapoff, Jody Hessel, and Laurie Petitti bring this count on behalf of themselves, the proposed Nationwide Class, California Subclass, New York Subclass, and Illinois Subclass.

112. Each of the states represented by Plaintiffs has adopted UCC § 2-314, which states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." See Cal. Comm. Code § 2314 (California); N.Y. U.C.C. § 2-314 (New York); and 810 Ill. Comp. Stat. 5/2-314 (Illinois).

113. Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Product, made representations and omissions to Plaintiffs and the Class that, among other things, the Product was labeled as being a "Maximum Strength" lidocaine product.

114.   Plaintiffs and the Class bought the Product manufactured, advertised, and sold by Defendant, as described herein.

115.   Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiffs and the Class, and there was, in the sale to Plaintiffs and other consumers, an implied warranty that those goods were merchantable.

116.   However, Defendant breached that implied warranty in that the Product is inaccurately labeled as being a "Maximum Strength" lidocaine product when it is not because other comparable lidocaine products exist in the market that contain more lidocaine than Defendant's Product.

117.   At all times relevant herein, Defendant was aware, or should have been aware, of the implied warranties regarding the Product.

118.   Defendant made the "Maximum Strength" representations and omissions with the intention that Plaintiffs and Class Members would rely on the "Maximum Strength" representations and omissions. Plaintiffs and Class Members did, in fact, rely on Defendant's "Maximum Strength" representations and omissions when deciding to purchase the Product.

119.   Where required, Defendant's implied warranties were material to Plaintiffs and Class Members decisions to purchase the Product.

120.   All conditions precedent to Defendant's liability for its breach of implied warranties have been performed by Plaintiffs and Class Members.

121.   Defendant received direct electronically mailed notice from Plaintiffs related to the claims at issue in this First Amended Complaint, and specifically Defendant's breaches of its implied warranties. Specifically, as early as March 19, 2021, the original Complaint filed in this matter operated as sufficient notice to Defendant to inform it of its breaches of implied warranties. Moreover, Plaintiffs' counsel served via e-mail Defendant's counsel with pre-suit notice of its breaches of warranties on behalf y of Plaintiffs and Class Members: on August 13, 2021 by

Plaintiff Hrapoff; on August 16, 2021 by Plaintiff Hessel; and on August 18, 2021 by Plaintiff Petitti.

122.   Defendant's counsel acknowledged receipt of Plaintiffs' pre-suit notice letters by responding to Plaintiffs' counsel's email(s) regarding service of the pre-suit notice letters.

123.   Defendant also has notice of the conduct related to its breach of implied warranties by way of the lawsuit that was filed: *Scilex Pharmaceuticals, Inc. v. Sanofi-Aventis U.S. LLC, et al.*, 4:21-cv-01280 (N.D. Cal.) (filed on February 23, 2021).

124.   As an actual and proximate result of Defendant's conduct, Plaintiffs and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods nor are they fit for their ordinary purpose of providing the benefits as promised.

125.   Plaintiffs and the Class have sustained damages as a proximate result of the foregoing breach of implied warranties in the amount, *inter alia*, of the Product's purchase prices.

## COUNT III
## <u>VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW</u>
### Cal. Bus. & Prof. Code § 17500 ("FAL")
### (On Behalf of Plaintiff Hrapoff and the California Subclass)

126.   Plaintiff Hrapoff repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

127.   Plaintiff Hrapoff brings this count on behalf of herself and the California Subclass against Defendant.

128.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

129.   It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

130.   As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to its "Maximum Strength" representations and omissions on the Product's labeling and advertising misled consumers acting reasonably.

131.   Plaintiff Hrapoff and California Subclass Members suffered injuries in fact as a result of Defendant's actions as set forth herein because they purchased Defendant's Product in reliance on Defendant's false and misleading "Maximum Strength" lidocaine labeling claims as alleged herein.

132.   Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Product in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

133.   Defendant profited from its sale of the falsely and deceptively advertised Product to unwary consumers.

134.   As a result, Plaintiff Hrapoff and the California Subclass are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

135.   Plaintiff Hrapoff and the California Subclass were damaged because they would not have purchased (or paid a premium) for Defendant's Product had they known the true facts regarding the "Maximum Strength" lidocaine representations contained on the front label of the Product.

## COUNT IV
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")
### (On Behalf of Plaintiff Hrapoff and the California Subclass)

136.   Plaintiff Hrapoff repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

137.   Plaintiff Hrapoff brings this count on behalf of herself and the California Subclass against Defendant.

138.   Defendant is subject to the Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, et seq. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

139.   Defendant violated the "unlawful" prong of the UCL by violating California's False Advertising Law ("FAL") as described in Count III, *supra*.

140.   Defendant's conduct, described herein, violated the "unfair" prong of the UCL because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

141.   Defendant's conduct with respect to the labeling, advertising, and sale of the Product was unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the FAL.

142.   Defendant's conduct with respect to the labeling, advertising, and sale of the Product was unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

143.   Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL.

144.   A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test. As set forth herein, Defendant's "Maximum Strength" lidocaine claims contained on the Product's front labeling were false and are likely to mislead or deceive the public.

145.   Moreover, Defendant omitted from the Product's labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%) and therefore this conduct was false and misleading and "fraudulent" under the UCL.

146.   Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Product to unwary consumers.

147.   Defendant's conduct caused substantial injury to Plaintiff Hrapoff and the other California Subclass Members. Plaintiff Hrapoff has suffered injury in fact as a result of Defendant's unlawful conduct. Plaintiff Hrapoff and California Subclass Members were damaged because they would not have purchased (or paid a premium) for Defendant's Product had they known the true facts regarding Defendant's "Maximum Strength" representations and omissions.

148.   In accordance with Bus. & Prof. Code § 17203, Plaintiff Hrapoff seeks an order requiring Defendant to commence a corrective advertising campaign.

149.   Plaintiff Hrapoff and the California Subclass also seek an order for and restitution of all monies from the sale of the Product, which were unjustly acquired through acts of unlawful competition.

## COUNT V
## VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### Cal. Civ. Code § 1750 et seq. ("CLRA")
### (On Behalf of Plaintiff Hrapoff and the California Subclass)

150.   Plaintiff Hrapoff repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

151.   Plaintiff Hrapoff brings this count on behalf of herself and the California Subclass against Defendant.

152.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

153.   Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Product for personal, family, or household purposes by Plaintiff Hrapoff and California Subclass Members, and violated and continues to violate the following sections of the CLRA:

a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

154.   Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

155.   Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

156.   On August 13, 2021, Plaintiff Hrapoff, on behalf of herself and all California Subclass Members sent a Consumer Legal Remedies Notice letter via

email, pursuant to Cal. Civ. Code § 1782, to counsel for Defendant, who represented that service upon Defendant via email was acceptable.

157.   Defendant also has notice of the conduct related to its violation of the CLRA by way of the lawsuit that was filed: *Scilex Pharmaceuticals, Inc. v. Sanofi-Aventis U.S. LLC, et al.*, 4:21-cv-01280 (N.D. Cal.) (filed on February 23, 2021).

158.   Pursuant to California Civil Code § 1780, Plaintiff Hrapoff, on behalf of herself and the California Subclass Members, seek injunctive relief, reasonable attorney fees and costs, restitution, damages, and any other relief that the Court deems proper.

## COUNT VI
## VIOLATIONS OF THE NEW YORK
## DECEPTIVE TRADE PRACTICES ACT
### New York Gen. Bus. Law § 349, *et seq*. ("GBL")
### (On Behalf of Plaintiff Hessel and the New York Subclass)

159.   Plaintiff Hessel repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

160.   Plaintiff Hessel brings this count on behalf of himself and the New York Class against Defendant.

161.   The New York Deceptive Acts and Practices Act makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

162.   Defendant engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, as described herein.

163.   Defendant's foregoing acts and practices, including its omissions, as alleged herein, were directed at consumers.

164.   Defendant's representations and omissions were material, in part, because they concerned an essential part of the Products' composition and also because they were likely to deceive reasonable consumers.

165.   Defendant's foregoing deceptive acts and practices, including its omissions, were and are deceptive acts or practices in violation of New York's General Business Law section 349, Deceptive Acts and Practices, N.Y. Gen. Bus. Law 349, *et. seq.*, in that:

- Defendant represented to Plaintiff Hessel and New York Subclass Members that the Product had approval or characteristics that it did not have;

- Defendant represented to Plaintiff Hessel and New York Subclass Members that the Product was of a particular standard, quality, or grade when it was actually of another;

- Defendant advertised to Plaintiff Hessel and New York Subclass Members goods with intent not to sell them as advertised;

- Defendant engaged in other fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding; and

- Defendant represented that consumers' purchases of the Product conferred or involved rights that the transactions did not have or involve.

166.   Plaintiff Hessel and New York Subclass Members suffered damages when they purchased the Product. Defendant's unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiff Hessel and New York Subclass Members.

167.   Defendant's foregoing deceptive acts and practices, including its omissions, as discussed herein, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

168.   Plaintiff Hessel reserves the right to allege other violations of the law, which constitute other unlawful business acts and practices. As alleged herein, Defendant continues to misrepresent the Product's abilities and continues to represent that the Product is a "Maximum Strength" lidocaine product. Further, Defendant has

not provided any remedial efforts to Plaintiff Hessel and New York Subclass Members, and Defendant's conduct is ongoing and continues to this date.

169.   Defendant recklessly disregarded Plaintiff Hessel's and New York Subclass Members' rights.

170.   Defendant's knowledge of the Product's deceptive claims put it on notice that Defendant's Product was not as it advertised.

171.   In accordance with subsection (h) of section 349, Plaintiff Hessel seeks an order enjoining Defendant from continuing these unlawful deceptive acts and practices. Absent enjoining these unlawful deceptive acts and practices, Defendant will continue its false and misleading marketing of the Product and, in doing so, irreparably harm Plaintiff Hessel and each of the New York Subclass Members.

172.   As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Hessel and the New York Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Product.

173.   By reason of the foregoing, Plaintiff Hessel and the New York Subclass Members also seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. Gen. Bus. Law § 349(h).

## COUNT VII
## VIOLATIONS OF THE NEW YORK
## DECEPTIVE SALES PRACTICE ACT
**New York Gen. Bus. Law § 350, *et seq*. ("GBL")**
**(On Behalf of Plaintiff Hessel and the New York Subclass)**

174.   Plaintiff Hessel repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

175.   Plaintiff Hessel brings this count on behalf of himself and the New York Subclass against Defendant for violation of New York General Business Law § 350.

176.   Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 350.

177.   New York General Business Law § 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-a. The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates." *Id*.

178.   Defendant's labeling, marketing, and advertising of the Product, as alleged herein, are "misleading in a material respect," and are thus "false advertising." As described herein, Defendant repeatedly advertised, both on the Product labels and through a national advertising campaign, *inter alia*, that the Product was a "Maximum Strength" lidocaine product.

179.   As alleged herein, contrary to its representations and omissions, the Product is not a "Maximum Strength" lidocaine product. Despite being advertised as a "Maximum Strength" lidocaine product, comparable lidocaine products exist in the marketplace that contain more lidocaine than Defendant's Product.

180.   Defendant had exclusive knowledge of material facts concerning the deceptive nature of the labeling and marketing of the Product.

181.   Defendant's conduct caused and continues to cause injury to consumers, including Plaintiff Hessel and New York Subclass Members, in that they were misled to believe that they were purchasing a "Maximum Strength" lidocaine product.

182.   In making and disseminating the false labeling and statements alleged herein, Defendant knew, or should have known, that its practices were materially deceptive and misleading in violation of N.Y. Gen. Bus. Law § 350, *et seq*.

183.   Plaintiff Hessel and the New York Subclass Members based their decision to purchase the Product in substantial part on Defendant's labeling,

advertisements, material representations. The revenue to Defendant attributable to the sale of the Product likely amounts to millions of dollars.

184.   Based on all the foregoing, Defendant has violated New York General Business Law § 350, causing Plaintiff Hessel and the New York Subclass Members to sustain injury in fact – the loss of monies paid for the Product.

185.   The misrepresentations by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of N.Y. Gen. Bus. Law § 350, *et seq.*

186.   Plaintiff Hessel seeks an order enjoining Defendant from continuing this false advertising. Absent enjoining this false advertising, Defendant will continue to mislead Plaintiff Hessel and the New York Subclass Members and, in doing so, irreparably harm each of the New York Subclass Members.

187.   As a direct and proximate result of Defendant's violation of New York General Business Law § 350, Plaintiff Hessel and the New York Subclass Members have also suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff Hessel and the New York Subclass Members also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. Gen. Bus. Law § 350-e (3).

## COUNT VIII
## <u>VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT</u>
### 815 ILCS 505/1, *et seq*. ("ICFA")
### (On Behalf of Plaintiff Petitti and the Illinois Subclass)

188.   Plaintiff Petitti repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

189.   The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

190.   Plaintiff Petitti and other members of the Illinois Subclass, as purchasers of the Product, are consumers within the meaning of the ICFA given that Defendant's business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

191.   Defendant's conduct in misrepresenting the benefits of its Product constitute the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

192.   Defendant also knowingly concealed, suppressed, and consciously omitted material facts to Plaintiff Petitti and other members of the Illinois Subclass knowing that consumers would rely on the advertisements and packaging and Defendant's uniform representations to purchase the Product.

193.   Consumers (Plaintiff Petitti and other members of the Illinois Subclass) were entitled to disclosure of the fact that Defendant's 4% lidocaine Product is not a "Maximum Strength" lidocaine Product, as represented by Defendant, because the strength of lidocaine in a pain relief product, as advertised, would be a material fact in a consumer's decision-making process, and, without Defendant's disclosure consumers would not necessarily know that they were not receiving a "Maximum Strength" lidocaine product.

194.   Defendant intended that Plaintiff Petitti and the Illinois Subclass members would rely on the continued deception by purchasing the Product, unaware of the material facts and omissions described above. Defendant knew that its customers would continue to rely on its representations that the Product was a "Maximum Strength" lidocaine product in purchasing the Product. This conduct constitutes consumer fraud within the meaning of the ICFA.

195.   Defendant's material non-disclosure set forth above constitutes an unconscionable   commercial   practice,   deception,   fraud,   false   promise,

misrepresentation and/or omission of material facts as to the nature of the goods, in violation of the ICFA.

196.   Plaintiff Petitti and the other members of the Illinois Subclass suffered damages as a proximate result of the unfair acts or practices of Defendant alleged herein. Defendant's misrepresentations and/or omissions of material fact were done knowingly, intentionally, willfully or with reckless disregard for the consequences of its actions.

197.   Plaintiff Petitti and other members of the Illinois Subclass would not have purchased the Product (or would have paid less for the Product) but for the promised benefits and concealment of any risk of harm because the Product as sold had no intrinsic value to them.

198.   Defendant knowingly accepted the benefits of its deception and improper conduct in the form of profits from the increased sale of the Product.

199.   As a proximate result of the above-described violations of the ICFA, Plaintiff Petitti and other members of the Illinois Subclass: (a) purchased and used the Product when they would not otherwise have done so; and (b) suffered economic losses consisting of the cost of purchasing the Product.

200.   Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

201.   Plaintiff Petitti also seeks to enjoin Defendant's ongoing deceptive practices relating to their claims on the Product's labels and advertising.

## COUNT IX
## VIOLATION OF THE ILLINOIS UNIFORM
## DECEPTIVE TRADE PRACTICES ACT
### 815 ILCS §§ 510/2, *et seq*.
### (On Behalf of Plaintiff Petitti and the Illinois Subclass)

202.   Plaintiff Petitti repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

203.   Plaintiff Petitti brings this claim on behalf of herself and the Illinois Subclass against Defendant for violations of the Illinois Uniform Deceptive Trade Practices Act, ILCS §§ 510/2, *et seq.*

204.   Defendant constitutes a "person" as defined by 815 ILCS §§ 510/1(5).

205.   Defendant engaged in deceptive trade practices in the conduct of its business, in violation of 815 ILCS §§ 510/2(a), including:

- Defendant represented to Plaintiff Petitti and the Illinois Subclass that the Product had approval or characteristics that it did not have;

- Defendant represented to Plaintiff Petitti and the Illinois Subclass that the Product was of a particular standard, quality, or grade when it was actually of another;

- Defendant advertised to Plaintiff Petitti and the Illinois Subclass goods with intent not to sell them as advertised;

- Defendant engaged in other fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding; and

- Defendant represented that consumers' purchases of the Product conferred or involved rights that the transactions did not have or involve.

206.   As described herein, Defendant repeatedly advertised, both on the Product labels and through a national advertising campaign, *inter alia*, that the Product is a "Maximum Strength" lidocaine product.

207.   Contrary to its representations and omissions as discussed herein, the Product is not a "Maximum Strength" lidocaine product because Defendant's Product only contains a 4% concentration of lidocaine when other comparable lidocaine products exist in the marketplace that contain a greater amount of lidocaine (and thus, are stronger) than Defendant's Product.

208.   Defendant had exclusive knowledge of material facts concerning the deceptive nature of the Product's labeling and advertising, including that the Product was not a "Maximum Strength" lidocaine product, as discussed herein.

209.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff Petitti and Illinois Subclass Members.

210.   The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Petitti and Illinois Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

211.   As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Petitti and Illinois Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Product.

212.   Plaintiff Petitti and Illinois Subclass Members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

## COUNT X
## FRAUD
### (On Behalf of All Plaintiffs and the Nationwide Class)

213.   Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

214.   Plaintiffs Cheri Hrapoff, Jody Hessel, and Laurie Petitti bring this count on behalf of themselves, the Nationwide Class, California Subclass, New York Subclass, and Illinois Subclass against Defendant, Hisamitsu.

215.   Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

- **WHO**: Defendant, Hisamitsu America, Inc., made material misrepresentations and/or omissions of fact in its labeling and marketing of the Product by representing that the Product is a "Maximum Strength" lidocaine product.

- **WHAT**: Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product is a "Maximum Strength" lidocaine product. Defendant omitted to Plaintiffs and Class Members that the Product is not a "Maximum Strength" lidocaine product because other lidocaine products exist in the market that contain a higher amount (i.e. 5%) of lidocaine. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has and contains to represent that the Product is a "Maximum Strength" lidocaine product when it is not, and has omitted from the Product's labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

- **WHEN**: Defendant made material misrepresentations and/or omissions detailed herein, including that the Product is a "Maximum Strength" lidocaine product, continuously throughout the applicable Class period(s).

- **WHERE**: Defendant's material misrepresentations and omissions, that the Product is a "Maximum Strength" lidocaine product were made on the front labeling and packaging of the Product and throughout Defendant's advertising. Defendant's "Maximum Strength" front label misrepresentations are written in blond font and highlighted in bright yellow, which instantly catches the eye of all reasonable consumers, including Plaintiffs, at the point of sale in every transaction. The Product is sold in brick and mortar and online retailers nationwide.

- **HOW**: Defendant made written misrepresentations right on the front label of the Product that the Product was a "Maximum Strength" lidocaine product even though other stronger lidocaine products are available in the market. As such, Defendant's "Maximum Strength" representations are false and misleading. Moreover, Defendant omitted from the Product's labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%). And as discussed in detail throughout this First Amended Complaint, Plaintiffs and Class Members read and relied on Defendant's "Maximum Strength" representations before purchasing the Product.

- **WHY**: Defendant misrepresented its Product as being a "Maximum Strength" lidocaine product and omitted from the Product's labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%) for the express purpose of inducing Plaintiffs and Class Members to purchase the Product at a substantial price premium. As such, Defendant profited by selling the misrepresented Product to at least thousands of consumers throughout the nation.

216. As alleged herein, Defendant Hisamitsu made these material "Maximum Strength" representations and omissions in order to induce Plaintiffs and Class Members to purchase the Product.

217. As alleged in detail herein, Hisamitsu knew the misrepresentations and omissions regarding the Product were false and misleading but nevertheless made such representations and omissions through the marketing, advertising and on the Product's labeling. In reliance on these representations and omissions, Plaintiffs and Class Members were induced to, and did, pay monies to purchase the Product.

218. Had Plaintiffs and the Class known the truth about the Product, they would not have purchased the Product.

219.   As a proximate result of the fraudulent conduct of Defendant, Hisamitsu, Plaintiffs and Class Members paid monies to Defendant, through its regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

**COUNT XI**
**<u>UNJUST ENRICHMENT</u>**
**(On Behalf of All Plaintiffs and the Nationwide Class)**
**(In the Alternative to Count I)**

220.   Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

221.   Plaintiffs Cheri Hrapoff, Jody Hessel, and Laurie Petitti bring this count on behalf of themselves and the Nationwide Class against Defendant in the alternative to Count I.

222.   Plaintiffs and Class Members conferred benefits on Defendant by purchasing Defendant's Product at a premium price.

223.   Defendant had knowledge of such benefits.

224.   Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members purchasing its Product. Defendant's retention of these monies under these circumstances is unjust and inequitable because Defendant falsely and misleadingly labeled its Product as a "Maximum Strength" lidocaine product when it knew or should have known that those representations were false or misleading.   Defendant's "Maximum Strength" misrepresentations and omissions caused injuries to Plaintiffs and Class Members because they would not have purchased (or paid a premium) for Defendant's Product had they known the true facts regarding the "Maximum Strength" claims made on the Product's label and in Defendant's advertising.

225.   Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class Members is unjust and inequitable, Defendant must pay

restitution to Plaintiffs and Class Members for unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and/or Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class Members;

b. For an order declaring that Defendant's conduct violated the laws referenced herein;

c. For an order finding in favor of Plaintiffs and the Class and/or Subclass on all counts asserted herein;

d. For statutory and compensatory damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For injunctive relief as pleaded or as the Court may deem proper;

g. For an order of restitution and all other forms of equitable monetary relief;

h. For an order awarding Plaintiffs and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit;

i. Damages in an amount to be determined at trial; and

j. For such other and further relief as the Court may deem proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all claims and issues so triable.

Dated: September 13, 2021          Respectfully submitted,

*/s/ Jonathan Shub*
Jonathan Shub (Sate Bar No. 237708)
Kevin Laukaitis*
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033
T: 856-772-7200
F: 856-210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

Nick Suciu*
**BARBAT MANSOUR SUCIU & TOMINA PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, Michigan 48301
Tel: (313) 303-3472
Email: nicksuciu@bmslawyers.com

Charles E. Schaffer*
David C. Magagna Jr.*
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

Susan S. Brown (State Bar No. 287986)
**SUSAN BROWN LEGAL SERVICES**
388 Market Street, Suite 1300
San Francisco, CA 94111
Phone: (415) 712-3026
susan@susanbrownlegal.com

**Pro Hac Vice* Application Submitted or Granted

*Attorneys for Plaintiffs and Putative Class
Members*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Jonathan Shub, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am an attorney at the Shub Law Firm LLC, counsel of record for Plaintiffs in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The First Amended Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct that this declaration was executed at Haddonfield, New Jersey this 13th day of September, 2021.

*/s/ Jonathan Shub*
Jonathan Shub