UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERI HRAPOFF, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>HISAMITSU AMERICA, INC.,<br><br>    Defendant. | Case No. 21-cv-01943-JST<br><br>**MOTION TO DISMISS GRANTED IN PART AND DENIED IN PART**<br><br>Re: ECF No. 42 |

Before the Court is Defendant Hisamitsu America, Inc.'s ("Hisamitsu") motion to dismiss. ECF No. 42. The Court will grant the motion in part and deny it in part.

## I.    BACKGROUND

Plaintiff Cheri Hrapoff, a citizen of California, Plaintiff Jody Hessel, a citizen of New York, and Plaintiff Laurie Petitti, a citizen of Illinois, on behalf of themselves and all others similarly situated, filed this putative class action against Hisamitsu, a company that markets, distributes, and sells pain relieving products, including Salonpas® Lidocaine Pain Relieving Gel-Patch ("patch"). ECF No. 37 at 1, 5-6. According to the complaint, the patch is advertised by Hisamitsu as "Maximum Strength," even though it "contains only 4% lidocaine while competing prescription patches contain 5% lidocaine." *Id.* ¶¶ 7, 29. Because "consumers can actually obtain a stronger dose comparable lidocaine patch that is available in the market," the complaint alleges that the patch is not a "Maximum Strength" lidocaine product as advertised. *Id.* ¶ 30. The complaint alleges that Hisamitsu's advertising "preys on consumers' desire for maximum pain relief to drive substantial profits." *Id.* ¶ 32. The complaint also alleges that Hisamitsu was aware that its patches were not "Maximum Strength" and points to a quote on Hisamitsu's website which compared the 4% lidocaine in Hisamitsu's patch to the 5% prescription patch. *Id*. at 10 n.9.

Plaintiffs allege that "had they known the true facts regarding the patch's 'Maximum Strength' representations and omissions" they would not have paid a premium or would not have purchased the patch. *Id.* ¶ 11.

The complaint alleges the following causes of action: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) violation of California False Advertising Law ("FAL"); (4) violation of California Unfair Competition Law ("UCL"); (5) violation of California Consumer Legal Remedies Act ("CLRA"); (6) violations of the New York Deceptive Trade Practices Act; (7) violations of the New York Deceptive Sales Practice Act; (8) violation of the Illinois Consumer Fraud Act; (9) violation of the Illinois Uniform Deceptive Trade Practices Act; (10) fraud; and (11) unjust enrichment. *Id.* at 21-41.

## II.     JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §1332.

## III.    LEGAL STANDARD

A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Any claims that are "grounded in fraud . . . must satisfy the traditional plausibility standards of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule

1  9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). Under Rule 9(b) "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks, alterations, and citations omitted).

## IV. DISCUSSION

### A. Nationwide Class Standing

Hisamitsu contends that "Plaintiffs lack standing to pursue claims under the laws of states where they do not reside or make their purchases." ECF No. 42 at 29. Plaintiffs respond by arguing that the Court should defer the issue of standing until class certification has been resolved. ECF No. 45 at 20-21. The Ninth Circuit in *Melendres* acknowledged that courts have reached differing conclusions on this issue, but held that "the issue [is] better addressed as part of class certification." *Pecanha v. The Hain Celestial Grp., Inc.*, No. 17-cv-04517-EMC, 2018 WL 534299, at *9 (N.D. Cal. Jan. 24, 2018) (citing *Melendres v. Arpaio*, 784 F.3d 1254, 1261-62 (9th Cir. 2015)). Although *Melendres* "involved a dissimilarity in injuries suffered," while this case involves named plaintiffs bringing legal claims pursuant to state laws for states they did not reside in, "the distinction is not material for purposes of taking the class certification approach." *Id*. Therefore, the Court will not dismiss the complaint for failure to establish nationwide class standing.

### B. Fraud-Based Statutory Claims

Hisamitsu argues that Plaintiffs' fraud-based statutory claims must be dismissed because they have not adequately demonstrated any misleading or deceptive conduct. ECF No. 42 at 21. In *Scilex Pharmaceuticals Inc. v. Sanofi-Aventis*, 21-cv-1280-JST, ECF No. 86, the Court examined the same label at issue in this case and found, based on the totality of the information available, that the disclaimer and asterisk on the label "do[] not require dismissal of the fraudulent advertising claims at this stage of the proceedings." *Id.* at 19. Whether a reasonable consumer

3

could imply from the language on the label that the patch is superior, or at least equivalent, in efficacy and results to prescription-strength lidocaine products is a question of fact that cannot be resolved at this juncture. Therefore, the Court rejects these arguments for the same reasons it rejected them in *Scilex*.

Hisamitsu also raises new arguments in its motion to dismiss. It argues that "Plaintiffs fail to direct this court to particularized allegations that support their fraud theories," such as the specific marketing materials they allegedly reviewed and relied on. ECF No. 48 at 11. Although the complaint could have been clearer, the Court finds that the information provided is sufficient to establish a claim under Rule 9(b). The complaint alleges that the patch label includes "Maximum Strength" language, and Plaintiffs viewed these labels when they purchased the patches. If "marketing materials" refers to materials beyond the "Maximum Strength" language, Plaintiffs must amend the complaint to provide more information, as required by Rule 9(b).

Hisamitsu also argues that Plaintiffs' claims fail because "Plaintiffs admit they reviewed the Product's 'marketing materials,' which informed them that prescription-strength alternatives existed." ECF No. 42 at 27. This argument is in substantial tension with Hisamitsu's earlier argument that Plaintiffs do not describe which "marketing materials" they reviewed. Further, there is nothing in the complaint establishing that the marketing materials reviewed by Plaintiffs informed them of prescription-strength alternatives. Hisamitsu's citation to footnote 9 in the complaint does not change this conclusion. That footnote states that *Hisamitsu*, not Plaintiffs, was aware that its patches were not "Maximum Strength" and points to a quote on Hisamitsu's website which compared the 4% lidocaine in Hisamitsu's patch to the 5% prescription patch. ECF No. 37 at 10 n.9. Importantly, the footnote never states that Plaintiffs read this quote before purchasing the patches. *Id.* Therefore, Hisamitsu has not established that Plaintiffs reviewed marketing materials that informed them that prescription-strength patches contained a higher percentage of lidocaine.

Next, Hisamitsu argues that Plaintiffs fail to allege a duty to disclose because the facts in the complaint "do[] not present any safety issues for consumers of [Hisamitsu's] products." ECF No. 42 at 27 (quoting *Wirth v. Mars Inc.*, No. SA CV 15-1470-DOC (KESx), 2016 WL 471234, at

4

*4 (C.D. Cal. Feb. 5, 2016), *aff'd*, 730 F. App'x 468 (9th Cir. 2018)).  But that is not the only way to allege a duty to disclose.  Such a duty also exists if "disclosure is necessary to counter an affirmative representation."  *McCoy v. Nestle USA, Inc.*, 173 F. Supp. 3d 954, 966 (N.D. Cal. 2016).  Because the complaint in this case appears to allege a duty to disclose based on an affirmative misrepresentation theory, the complaint need not allege "safety issues."[1]  *See, e.g.*, ECF No. 37 ¶ 76 ("Defendant's 'Maximum Strength' front label misrepresentations . . . instantly catches the eye of all reasonable consumers").

Hisamitsu claims that Plaintiffs fail to allege causation, damages, or injury.  Hisamitsu points out that the complaint "makes no representations that the alleged issues resulted in payment of a premium."  ECF No. 48 at 11.  But this is exactly what the complaint alleges.  *See, e.g.*, ECF No. 37 ¶ 35 ("Defendant's marketing efforts are made in order to—and do in fact—induce customers to purchase the Product at a premium.").

Hisamitsu also argues that "Plaintiffs do not and cannot allege the existence of an OTC lidocaine patch that contains a higher dosage of lidocaine than the [patch]."  ECF No. 48 at 12.  But Plaintiffs have alleged the existence of a *prescription* patch with a higher dosage of lidocaine.  As stated above, the question of whether a reasonable consumer would understand the "Maximum Strength" language to include both OTC and prescription patches will not be determined at this stage of the litigation.  Defendant's motion to dismiss on this ground is denied.

Finally, Hisamitsu contends that Plaintiffs fail to establish a cognizable injury or damages because they "do not allege any facts showing their eligibility to use prescription-strength lidocaine patches, much less that they consulted with a doctor who has advised them to use a prescription lidocaine patch for a non-FDA approved use, that they would be willing to take the risk associated with taking a prescription product for a non-FDA approved use, or that they would be willing for pay for a 5% prescription lidocaine patch."  *Id*.  But Plaintiffs' damages do not rest on the theory that they would have purchased prescription products.  Instead, the complaint alleges that, had they known the label was misleading, Plaintiffs would not have purchased Hisamitsu's

---

[1] To the extent that the complaint alleges an omissions-based theory, the Court grants the motion to dismiss without prejudice.  Plaintiffs may amend the complaint to establish a duty to disclose.

1    patch or would have paid less for it. ECF No. 37 ¶ 49. That is sufficient to establish injury-in-
2    fact. *See Boswell v. Costco Wholesale Corp.*, No. SA CV 16-0278-DOC (DFMx), 2016 WL
3    3360701, at *5 (C.D. Cal. June 6, 2016) (finding injury in fact sufficiently alleged where the
4    complaint stated that the plaintiffs "paid more for Kirkland Coconut Oil, and would only have
5    been willing to pay less, or unwilling to purchase it at all, absent the false and misleading label");
6    *Racies v. Quincy Bioscience, LLC*, No. 15-cv-292-HSG, 2015 WL 2398268, at *5 (N.D. Cal. May
7    19, 2015) (The "alleged purchase of a product that plaintiff would not otherwise have purchased
8    but for the alleged unlawful label is sufficient to establish an economic injury-in-fact.") (quoting
9    *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646, 2013 WL 675929, at *6 (N.D. Cal. Feb. 25,
10   2013)).
11         The Court therefore denies the motion to dismiss the fraud-based statutory claims.
12   **C.   Fraud**
13         In California, the common law elements of fraud are: "(1) a false representation, (2)
14   knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) damages." *Spring*
15   *Solutions Inc. v. Cell Wholesale, Inc.*, No. SACV 15-878-JLS (JCGx), 2015 WL 13919095, at *9
16   (C.D. Cal. Dec. 10, 2015) (citing *Vess*, 317 F.3d at 1105).
17         Plaintiffs have adequately stated a fraud claim. Plaintiffs allege that Hisamitsu
18   misrepresented the patch when it used the phrase "Maximum Strength" on the label. ECF No. 37
19   ¶ 5. According to the complaint, Hisamitsu knew that there were stronger lidocaine products
20   available via prescription and intended for consumers like Plaintiffs to rely on the
21   misrepresentation. *Id.* ¶ 7. To demonstrate this knowledge, the complaint alleges that in 2017,
22   Hisamitsu's website included a quote from spokesperson Dr. Bob Arnot, that Hisamitsu's patches
23   contained "4% of lidocaine which I'd argue is close to the 5% lidocaine patch you would get with
24   a prescription." *Id.* ¶ 32 n.9. The complaint also alleges that Plaintiffs relied on Hisamitsu's
25   misrepresentations, and as a result, suffered damages by purchasing the patches at a premium. *Id.*
26   ¶¶ 11, 103. These allegations sufficiently establish the elements of a common law fraud claim,
27   including intent to defraud. *See Avedisian v. Mercedes-Benz USA, LLC*, No. CV-12-00936 DMG
28   (CWx), 2013 WL 2285237, at *8 (C.D. Cal. May 22, 2013) ("Here, Plaintiff alleges that

6

1    Defendant knew about the defect before selling Plaintiff the vehicle, and never attempted to alert

2    customers to the defect. That is enough to infer intent to defraud.").

3    Hisamitsu also argues that "Plaintiffs' fraud claim fails under the economic loss rule."

4    ECF No. 42 at 36. "The economic loss rule requires a purchaser to recover in contract for purely

5    economic loss due to disappointed expectations, unless he can demonstrate harm above and

6    beyond a broken contractual promise." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th

7    979, 988 (2004). One exception to the economic loss doctrine is "where the contract was

8    fraudulently induced" due to an affirmative misrepresentation. *Id.* at 989-991 (citation omitted);

9    *Rattagan v. Uber Techs, Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021) ("In *Robinson*, the California

10   Supreme Court held that the economic loss rule does not bar fraud claims premised on affirmative

11   misrepresentations."). Hisamitsu argues that it is not enough that Plaintiffs allege affirmative

12   misrepresentation because they have not established independent tortious conduct. ECF No. 48 at

13   14. Although this might be an issue in the context of fraudulent concealment, the California

14   Supreme Court has determined that fraud claims premised on affirmative misrepresentations

15   "constitute[] an independent tort warranting an exception." *Rattagan*, 19 F.4th at 1191. Because

16   the complaint alleges fraud based on an affirmative misrepresentation on the label, the economic

17   loss rule does not bar this claim. *See Arabian v. Organic Candy Factory*, No. 2:17-cv-05410-

18   ODW-PLA, 2018 WL 1406608, at *8 (C.D. Cal. March 19, 2018) (finding fraud and

19   misrepresentation claims not barred by economic loss rule where complaint alleged "that

20   Defendant fraudulently induced Plaintiff to enter into contract for the purchase of the Gummy

21   Cubs, by affirmatively misrepresenting the Class Products [as] contain[ing] Real Ingredients").

22   The Court therefore denies the motion to dismiss the fraud claim.

23   **D.    Other Claims**

24   Many of Hisamitsu's arguments in favor of dismissing the remaining claims rest on the

25   premise that the "maximum strength" label is true and not misleading. *See, e.g.*, ECF No. 42 at

26   16. The Court has already found that this is a question of fact and will not dismiss Plaintiffs'

27   remaining claims on this basis.[2] The Court turns to Hisamitsu's remaining arguments below.

28   ---

[2] Hisamitsu's only argument regarding the express warranty claim is that it "provided exactly what

7

1. **Implied Warranty Claim**

Hisamitsu moves to dismiss Plaintiffs' implied warranty claims because "Plaintiffs admit they did not buy the [patch] from Hisamitsu" and therefore "cannot show privity" as required "[u]nder the laws of California, New York, and Illinois." *Id.* at 30-31. Hisamitsu is correct that all three states require plaintiffs bringing an implied warranty claim to stand in vertical privity with the defendant. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("[A] plaintiff asserting breach of implied warranty claims must stand in vertical contractual privity with the defendant."); *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 530 (E.D.N.Y. 2012) ("New York law allows claims of implied warranty to be brought only by those in privity with the named defendant." (citing *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 248 (2d Cir. 1986)); *Zylstra v. DRV, LLC*, 8 F.4th 597, 609 (7th Cir. 2021) ("[Defendants], on the other hand, asked the court to apply Illinois law, which requires privity of contract to bring a claim of implied warranty of merchantability.").

Plaintiffs do not dispute that they lack privity with Hisamitsu, but instead argue that privity is not required under California law when "the plaintiff relies on written labels or advertisements of a manufacturer." ECF No. 45 at 25 (quoting *Clemens*, 534 F.3d at 1023). In support of this proposition, the *Clemens* court cites *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 696 (1954). "[*Burr*] did *not* recognize an exception to privity in implied warranty claims, but instead stated that a 'possible exception to the general rule is found in a few cases where the purchaser of a product relied on representations made by the manufacturer in labels or advertising material, and recovery from the manufacturer was allowed on the theory of express warranty without a showing of privity.'" *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 853-54 (N.D. Cal. 2018) (quoting *Burr*, 42 Cal. 2d at 696). "*Burr* thus clarifies that 'where representations are made by means of label or advertisements,' the exception to privity is 'applicable only to express warranties' and not implied ones." *Id.* Accordingly, the Court finds that the vertical privity exception does not apply and grants Hisamitsu's motion to dismiss the implied warranty claims with leave to amend to allege

---

was promised." ECF No. 42 at 29. Therefore, the Court denies the motion to dismiss Plaintiffs' express warranty claim.

vertical privity.

### 2. Equitable Relief

Hisamitsu argues that "Plaintiffs' claims seeking equitable relief fail under the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), as Plaintiffs cannot show they lack legal remedies." ECF No. 42 at 3. Plaintiffs argue that *Sonner* "simply holds that a plaintiff 'must establish that she lacks an adequate remedy at law before securing' equitable relief – not before pleading it." ECF No. 45 at 9-10. Plaintiffs also note that the operative complaint alleges that they have an intention to purchase Defendant's lidocaine patch in the future if the product is truthfully labeled and not misleadingly labeled. ECF No. 37 ¶¶ 44, 55, 66, 93. For the reasons set forth below, the Court agrees with Plaintiffs but will nonetheless dismiss their claims for equitable relief.

In *Sonner*, the Ninth Circuit held that "federal courts must apply equitable principles derived from federal common law to claims for equitable restitution under" the UCL and CLRA. 971 F.3d at 837. "That holding, the Ninth Circuit explained, flowed from the general principle that 'a federal court must apply traditional equitable principles before awarding restitution,' an equitable remedy." *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 686–87 (N.D. Cal. 2021) (quoting *Sonner*, 971 F.3d at 841). "One well-established equitable principle is that equitable remedies will not be awarded when there is an 'adequate remedy at law.'" *Id.* (quoting *Sonner*, 971 F.3d at 842). Thus, the Ninth Circuit "affirmed the dismissal of the plaintiff's UCL and CLRA claims for equitable restitution because the plaintiff failed to: (i) allege she lacked an adequate remedy at law, and (ii) show she lacked an adequate remedy at law for damages under [the] CLRA." *Souter v. Edgewell Pers. Care Co.*, No. 20-CV-1486 TWR (BLM), 2022 WL 485000, at *12 (S.D. Cal. Feb. 16, 2022) (citing *Sonner*, 971 F.3d at 844-45). In *Sonner*, the court found that the plaintiff sought the same sum in equitable restitution as "a full refund of the purchase price – $32,000,000 – [which] she requested in damages to compensate her for the same past harm." *Sonner*, 971 F.3d at 844. The *Sonner* court denied the plaintiff's claim because she failed to "explain how the same amount of money for the exact same harm is inadequate or incomplete." *See id.*

9

Although the undersigned has previously applied *Sonner* in the manner Hisamitsu suggests, *see Sharma v. Volkswagon AG*, 524 F. Supp. 3d 891, 908-09 (N.D. Cal. 2021), a review of cases from other district courts in the Ninth Circuit persuades the Court that a more nuanced approach is appropriate. First, the plaintiff in *Sonner* did not even allege that she lacked an adequate remedy at law, 971 F.3d at 844, and another court in this district has persuasively concluded that "because *Sonner* was decided at a later posture, . . . if a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case." *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022). Second, given the unique facts of *Sonner*, it is not clear that its holding applies to all forms of equitable relief. It is easy to find equivalence between two separate requests for an identical $32,000,000; it is harder to do so with respect to a claim for damages, on the one hand, and a claim for injunctive relief, on the other. *See Zeiger*, 526 F. Supp. 3d at 687 (citing *Milliken v. Bradley*, 433 U.S. 267, 288-90 (1977) for the proposition that "[t]he Supreme Court has often affirmed that retrospective money damages play a markedly different role than prospective injunctive relief.").

Notwithstanding these considerations, however, the Court will grant Hisamitsu's motion to dismiss Plaintiffs' equitable claims because Plaintiffs' amended complaint does not allege that they lack an adequate remedy at law. Accordingly, these claims fail even under a more generous reading of *Sonner*. Plaintiffs have leave to amend these claims.

### 3. Unjust Enrichment

Courts in this district have recognized that "due to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal." *Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011) ("Several other courts in this district have similarly held that a plaintiff must specify the state under which it brings an unjust enrichment claim."). Here, Plaintiffs have failed to allege which state law governs their unjust enrichment claim. The Court therefore grants Hisamitsu's motion to dismiss the unjust enrichment claim with leave to amend to identify which state's law applies.

10

### 4. New York Deceptive Trade Practices Act ("GBL § 349"); New York Deceptive Sales Practice Act ("GBL § 350")

To state a claim under Sections 349 and 350 of the New York General Business Law (collectively "GBL"), Plaintiff Hessel "must establish that the defendant engaged in consumer oriented conduct that is materially misleading, and plaintiff was injured as a result of the deceptive act or practice." *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017). Hisamitsu argues that Plaintiff Hessel has not pleaded either materially misleading conduct or facts showing an injury due to a deceptive act. ECF No. 42 at 34.

As set forth above, Plaintiff Hessel has plausibly alleged misleading conduct. For the same reasons these allegations adequately plead claims under California's fraud-based statutes, they satisfy the requirements of the analogous New York law. *See, e.g., Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 479 (S.D.N.Y. 2014) (finding allegations that a product's label "conveys to consumers that the Aveeno products are completely natural, yet the products contain synthetic ingredients" sufficient under GBL § 349).

Plaintiffs have also adequately alleged injury. Unlike under California law, their allegation that they would not have purchased Hisamitsu's lidocaine patches absent Hisamitsu's allegedly misleading representations does not state an injury. *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999); *In re Amla Litig.*, 320 F. Supp. 3d 578, 595 (S.D.N.Y. 2018) ("*Small* stands for the simple proposition that one cannot recover merely for having been deceived – the deception must have caused an injury.") (citing *Small*, 94 N.Y.2d at 56). However, their allegation that they paid a premium for Hisamitsu's patches based on the alleged misrepresentations, ECF No. 37 ¶ 11, 35, 45, 50, 56, 61, 79, does state a cognizable injury. *Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311(JSR), 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013) ("The deception is the false and misleading label, and the injury is the purchase price."). Hisamitsu's motion to dismiss these claims is denied.

### 5. Illinois Consumer Fraud Act ("ICFA")

Finally, Hisamitsu contends that Plaintiff Petitti's ICFA claim must be dismissed because she has not alleged that the patch was defective or that she could have acquired it for a better price, as required under Illinois law. ECF No. 48 at 18-19. This argument is unavailing. The complaint

11

alleges that "Petitti and other members of the Illinois Subclass would not have purchased the Product (or would have paid less for the Product) but for the promised benefits and concealment of any risk of harm." ECF No. 37 ¶ 197. She also alleges that the price she paid was "a premium compared to other similar products." *Id.* ¶ 72. Other courts in Illinois have found similar allegations sufficient. *See McDonnell v. Nature's Way Products, LLC*, No. 16 C 5011, 2017 WL 1149336, at *3 (N.D. Ill. March 28, 2017) (collecting cases). The Court therefore denies the motion to dismiss the ICFA claim.

## CONCLUSION

For the foregoing reasons, the Court grant the motion to dismiss in part and denies it in part. Plaintiffs may file an amended complaint within 21 days of this order solely to address the deficiencies identified in this order. Failure to timely file an amended complaint will result in dismissal of the relevant claims with prejudice.

**IT IS SO ORDERED.**

Dated: June 16, 2022



JON S. TIGAR
United States District Judge